**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NATALIE COHEN,<br><br>    Plaintiff,<br>v.<br>UNITED STATES OF AMERICA,<br><br>    Defendants. | Case No.: 2:23-cv-07757-CBM-JPR<br><br>**ORDER RE: DEFENDANT UNITED STATES OF AMERICA'S MOTION FOR SUMMARY JUDGMENT** |

The matter before the Court is Defendant United States of America's Motion for Summary Judgment. (Dkt. No. 34 (the "Motion").) The matter is fully briefed.

### I. BACKGROUND

**A. Factual Background**

On September 19, 2023, Natalie Cohen ("Plaintiff") filed an action against the United States under the Federal Tort Claims Act ("FTCA") for personal injuries sustained while working at Vandenberg Air Space Base ("VASB"), a facility owned, operated, and controlled by the Department of the Air Force. (Compl. ¶ 7.) Plaintiff alleges the following:

Plaintiff is a civilian employee at the VASB, and her place of work is approximately one mile away from the Santa Maria entrance gate to the base. (*Id.*,

¶ 13.) There is an Active Vehicle Barrier ("AVB") installed on the VASB premises which security personnel on the base can activate "to block further ingress into the base." (*Id.*, ¶ 14.) On December 23, 2021, Plaintiff drove to work and arrived at the Santa Maria entrance; after presenting her base pass, she was cleared to enter the base. (*Id.*, ¶¶ 13-15.) She drove "about 100-200 yards into the base," within the speed limit, when "without warning from any source," the AVB suddenly deployed and "popped up from the ground [] in front of [her.]" (*Id.*, ¶ 15.) Plaintiff alleges that she "had no way of avoiding the immediate impact that occurred" and that as a result of the ensuing collision, she sustained "serious injuries, including fibula and rib fractures, multiple lacerations, contusions and bruises." (*Id.*, ¶ 17.) Plaintiff also alleges that her injuries are a "direct and proximate result of Defendant's negligent acts and/or omissions." (*Id.*)

**B.   Procedural Background**

On January 25, 2024, Defendant filed its Motion to Dismiss under Fed. R. Civ. P. 12(b)(1), alleging the Court lacks subject-matter jurisdiction because the discretionary function exception to the FTCA bars Plaintiff's cause of action. (Dkt. No. 14.)[1] The matter was fully briefed. (Dkt. Nos. 14, 15, 16.) On June 24, 2024, the Court granted in part and denied in part Defendant's Motion to Dismiss leaving the following causes of actions:

Plaintiff alleges the United States of America, through its subdivision and/or agents and employees, including the Department of the Air Force, was negligent in: (b) Failing to properly secure the entrance gate such that the visitors or persons entering the facility cannot advance into the base without clearance;

---

[1] Congruent with the Motion to Dismiss, Defendant filed a Motion to Strike Plaintiff's Jury Demand under Fed. R. Civ. 12(f). (Dkt. No. 14.) The Court granted the Motion to Strike, finding the FTCA does not provide plaintiffs with a right to jury trial, which Plaintiff conceded should be stricken from the Complaint. (Dkt. No. 19.)

(c) Failing to ensure that Plaintiff, with a valid base pass and who was cleared to proceed into the base, would not be hindered or injured by the steel barrier; and
(d) Failing to provide adequate warning or notice of the barrier to Plaintiff.
(Compl. ¶ 19; Dkt. No. 19 "MTD Order.")

In the Court's MTD Order, the Court stated "[i]t is not clear from the facts alleged that the decision to activate the barrier implicated the type of policy concerns the DFE is designed to shield…Based on the facts available, the Court cannot conclude that there was a decision made or that the decision was 'susceptible to policy analysis.'" (MTD Order at 9) (quoting *Lam v. United States*, 979 F.3d 665, 674 (9th Cir. 2020). Following the Court's MTD Order, Defendant filed its Answer to the Complaint. (Dkt. No. 20), and the parties proceeded with discovery, including document production and depositions. (Dkt. No. 34 at 6.) On June 10, 2025, Defendant filed the instant Motion for Summary Judgment arguing that the "factual record now demonstrates 'that the decision to activate the barrier implicated the type of policy concerns the DFE is designed to shield.'" (Dkt. No. 34) (quoting the Court's MTD Order at 9:10-14.)

**C.    Plaintiff's Opposition**

Plaintiff's Opposition to the Motion is not incompliance with various Federal Rules of Civil Procedure, Local Rules and the Court's Standing Order. First, Plaintiff's Opposition was due on June 17, 2025 based on the noticed hearing date pursuant to Local Rule 7-9 but filed the opposition almost a week late. Pursuant to Local Rule 11-3.1.1, Plaintiff's Opposition is size 12 font. Once enlarged to the required 14 size font, Plaintiff's Opposition exceeds the 25-page limit under the Court's Standing Order Rule 7(c). The parties are subject to a stipulated protective order (Dkt. No. 31.)  Plaintiff filed a notice of Errata (Dkt. No. 40) requesting to strike Exhibit E, a document titled 30 SFS Operating Instruction 31-10, which Plaintiff contends was inadvertently filed in Opposition to the Motion and should have been filed under seal as it is confidential,

containing information regarding the military base security protocols and systems, and is therefore subject to the stipulated protected order. Accordingly, Docket 36, Ex. E is **STRICKEN**.

Defendants argue that the Court should strike the declaration of Jason Fennell because he was never listed on Plaintiff's initial disclosures under Fed. R. Civ. P. 26(a)(1)(A)(i). On April 4, 2025, Plaintiff served her initial expert disclosures, listing Mr. Fennell as a "non-retained expert," at which point Defendant learned of his identity and purported relevance to the litigation. (Dkt. No. 45 at 4-5.) Defendant argues that the Court should strike the declaration entirely as admitting the information provided in the declaration would cause Defendant harm. However, on April 16, 2025, the parties submitted a joint stipulation to continue the trial date and remaining expert discovery deadlines (Dkt. 32), which the Court granted, extending the expert discovery cut off to August 29, 2025. (Dkt. No. 33.) In its joint stipulation, the parties requested the continuance due to "unexpected[] travel out of the country." (Dkt. No. 32.) The stipulation is silent as to the violation of the Federal Rules of Civil Procedure but mentions Mr. Fennell, "one of Plaintiff's non-retained experts" in the context of an anticipated motion *in limine*. (*Id*. ¶ 15.) On June 26, 2025, the parties filed a second joint stipulation to continue the remaining deadlines in the matter after Plaintiff filed a late Opposition to Defendant's MSJ. (Dkt. No. 43.) The Court granted the stipulation to continue the deadline for Defendant to file its reply in support of its MSJ and set the hearing date for August; the expert discovery deadlines, final pre-trial conference, and trial dates set in the Court's April 29, 2025 order (Dkt. No. 33) remained unchanged. (Dkt. No. 44.) Given the timing of the joint stipulation and granted continuances, Defendant does not seem to have been harmed by the disclosure without an opportunity to examine the witness and his knowledge but rather does not want to devote more resources than are necessary while the instant Motion is pending.

## II. STATEMENT OF THE LAW

On a motion for summary judgment, the Court must determine whether, viewing the evidence in the light most favorable to the nonmoving party, there are any genuine issues of material fact. *Simo v. Union of Needletrades, Indus. & Textile Employees*, 322 F.3d 602, 609-10 (9th Cir. 2003); Fed. R. Civ. P. 56. Summary judgment against a party is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A factual dispute is "material" only if it might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. *Id.* at 249. The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Rather, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [the nonmovant's] favor." *Anderson*, 477 U.S. at 255.

## III. DISCUSSION

"The FTCA waives the federal government's sovereign immunity for tort claims arising out of the negligent conduct of government employees and agencies in circumstances where the United States, if a private person, would be liable to the claimant under the law of the place where the act or omission occurred." *Green v. U.S.* 630 F.3d 1245, 1249 (9th Cir. 2011) (internal citation omitted). "However, the discretionary function exception provides an exception to the waiver of immunity from suit under the FTCA for '[a]ny claim … based upon the exercise or performance or the failure to exercise or perform a discretionary

function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved is abused.'" *Id.* (quoting 28 U.S.C. § 2680(a)). The discretionary function exception bars claims based on an act or omission of a Government employee,

> exercising due care [] in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance of the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved by abused.

28 U.S.C. § 2680(a). "'The purpose of this exception is to prevent "judicial 'second guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.'" *Morales v. United States*, 895 F.3d 708, 713 (9th Cir. 2018) (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984). The Federal courts "lack jurisdiction over any claim to which the [FTCA]'s discretionary-function exception applies." *Alfrey v. United States*, 276 F.3d 557, 561 (9th Cir. 2002); 28 U.S.C. § 2680(a). The Government bears the burden of proving that the discretionary function exception applies. *Vickers v. United States*, 228 F.3d 944, 950 (9th Cir. 2000) (citing *Sigman v. United States*, 217 F.3d 785, 793 (9th Cir. 2000)).

The United States moved for summary judgment on Plaintiff's claims that the Department of the Air Force was negligent in its operation of the AVB on the grounds that the decision falls within the discretionary function exception to the FTCA's waiver of sovereign immunity.

A two-part test determines if the discretionary function exception applies. The first step evaluates "whether the challenged action involved an element of choice or judgment, for it is clear that the exception 'will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow.'" *Vickers*, 228 F.3d at 949 (citing *United States v. Gaubert*,

499 U.S. 315, 322-23 (1991); *Berkovitz v. United States*, 486 U.S. 531, 535-37 (1988).) If choice or judgment is exercised, the second step looks at whether "that choice or judgment is of the type Congress intended to exclude from liability— that is, whether the choice or judgment was one involving social, economic, or political policy." *Id.* (citing *Gaubert*, 499 U.S. at 324).

### 1. **Element of Judgment or Choice**

"When a statute or regulation allows a federal agent to act with discretion, there is a 'strong presumption' that the authorized act is based on an underlying policy decision." *Nurse v. United States*, 226 F.3d 996, 1001 (9th Cir. 2000) (citing *Gaubert*, 499 U.S. at 324, 111 S.Ct. 1267). However, conduct cannot be discretionary if it violates a legal mandate. *Id.* at 1002 (citing *U.S. Fidelity & Guar. Co. v. United States*, 837 F.2d 116 (3d Cir. 1988)). In evaluating whether the federal agent's conduct falls within the discretionary-function exception, the focus is on the "nature of the conduct rather than the status of the actor." *Id.* (citing *Gaubert*, 499 U.S. at 324, 111 S.Ct. 1267).

Under *Berkovitz,* an agency policy strips government employees of discretion when it "specifically prescribes a course of action for an employee to follow." 486 U.S. at 536, 108 S.Ct. at 1958. Indeed, to remove discretion, the policy must constitute a "specific mandatory directive." *Id.* at 544, 108 S.Ct. at 1963. In her reply brief, Plaintiff argues that the IEC's training on the deployment of the barrier, as a use of force, requires "everything reasonably necessary is done to prevent injury to an innocent motorist," and that the IEC's training provides that "a security guard cannot just deploy the AVB when a vehicle immediately passes the gate without checking to see if another vehicle is close enough to [the] barrier such as to cause serious injury." (Dkt. No. 35 at 7.) Further, Plaintiff argues that the plain language of Operation Instruction 30-10 removes any element of discretion and, therefore, makes the discretionary function exception inapplicable. (Mot. at 9; *see also* Ex. E to Ogbogu Decl). Specifically, Plaintiff cites to

Operating Instruction 31-10's General Overview, which states:

> 1. General Overview
>
>    1.1. The barriers are designed to deter or stop vehicle traffic by inserting an immoveable obstacle into the roadway. These systems are deployed under emergency conditions to prevent vehicles from penetrating the installation ECP and gaining access to high-risk targets. The barriers are activated by the on-duty entry controllers as needed or as directed by high authority. <u>IAW AFI 31-117. Arming and Use of Force by Air Force Personnel, deployment of the Barrier System constitutes a use of force and must be compliant with the "objective reasonableness" standard.</u> The use of force model outlines the deployment of the Barrier System as a representation by security forces to overcome a suspect's action (unlawfully entering) through use of risk perception (determining if hostile/non-hostile). The IEC through the use of officer response will ALWAYS (activate the AVB system if the driver of a vehicle fails to stop and show authorized base access credentials regardless of hostile/non-hostile or known/unknown intent.)

(Mot. at 10; Dkt. No. 35 at 4; Ex. E to Ogbogu Decl.) (emphasis in original)

That argument, however, ignores that courts weigh whether the language in question is *predominantly* permissive or mandatory. *See Gonzalez v. United States*, 814 F. 3d 1022, 1030 (9th Cir. 2016) ("the presence of a few, isolated provisions cast in mandatory language does not transform an otherwise suggestive set of guidelines into binding agency regulations" where [government agents] "must regularly make judgment calls with respect to [implementing a policy]") (quoting *Sabow v. U.S.*, 93 F.3d 1445, 1453 (9th Cir. 1996)); *see also Chamberlin v. Isen*, 779 F.2d 522, 525 (9th Cir. 1985) (reviewing manual of patent examining procedures and concluding that while "[i]t is true that the MPEP contains some mandatory language [,f]or the most part, however, the MPEP only suggests or authorizes procedures for patent examiners to follow"); *Compact Board Store, Inc. v. United States*, 829 F.3d 600, 605 (8th Cir. 2016) ("Even when some provisions of a policy are mandatory, governmental actions remains discretionary if all of the challenged decisions involved 'an element of judgment or choice.') (quoting *Hart v. United States*, 630 F.3d 1085, 1086 (8th Cir. 2011); *Herden v. United States*, 726 F.3d 1042, 1047 (8th Cir. 2013) (predominantly permissive rather than

mandatory language signals policy were merely guidelines rather than mandatory requirements.)

Here, the IEC must evaluate whether the approaching vehicle is suspicious or hazardous, whether the approaching vehicle is a danger or threat to the base, whether and how to utilize the alternative methods of stopping the gate runner provided in Operating Instruction 30-10, whether there is any other reason not to deploy the barrier before doing so, and, as is at the heart of this case, the very timing in which to deploy the AVB to prevent a gate runner from entering the base once alternative methods have failed. Airman Dighton testified that he did not check to see the location of Plaintiff relative to the barrier (Dkt. No. 35 at 8), but that he made a "split-second" decision in using his discretion to deploy the AVB at the time he did to prevent the gate runner entering the base to the detriment of Plaintiff. (Dkt. No. 45 at 1.) Even Plaintiff's expert, Mr. Fennell, stated that "[t]he goal is to *exercise reasonable care* when deploying the AVB to stop unauthorized entrance and to avoid injury to innocent motorists whose injury can be prevented." Fennell Decl. ¶ 10 (emphasis added). The record demonstrates that the AVB and security gate were equipped with warning and safety features but that Plaintiff did not have time to stop at the point the AVB was deployed by the IEC, who, unfortunately, could not prevent injury to Plaintiff. Fennell Decl. ¶¶ 3-6. Accordingly, there is not a material dispute as to whether adequate notice was provided to Plaintiff.

Having considered the applicable law and arguments before the Court, the Government was not precluded from using its judgment and choice in deciding whether and how to deploy the AVB. As such, step one of the discretionary function exception is satisfied.

### 2. Considerations of Public Policy

Having determined that the decision to deploy the ABV was discretionary, the Court next considers next "whether that judgment is of the kind that

the discretionary function exception was designed to shield." *Gaubert*, 499 U.S. at 322-23, 111 S.Ct. 1267.  The discretionary function exception protects only government actions and decisions based on social, economic, and political policy. *Miller v. U.S.*, 163 F.3d 591, 593 (9th Cir. 1998); *Berkovitz*, 486 U.S. at 536-37. "The challenged decision need not be actually grounded in policy considerations, but must be, by its nature, susceptible to a policy analysis." *Green v. U.S.*, 630 F.3d 1245, 1251 (9th Cir. 2011).

As noted in the Court's MTD Order, *Rutherford v. United States*, 760 F. App'x 787 (11th Cir. 2019) squarely addresses whether the deployment of the AVB implicates the type of policy concerns the DFE is designed to shield.  In *Rutherford*, the plaintiff drove up to a U.S. Army base gate to leave the base when an unauthorized vehicle was trying to enter the base at the same time, and the gate guard deployed a steel barrier blocking both inbound and outbound lanes at the gate, injuring the plaintiff.  *Id*. at 788–89.  The Eleventh Circuit reversed the district court's post-trial judgment and held that the DFE barred the plaintiff's cause of action because the guard's decision to raise the barrier "was grounded in the public policy of ensuring the safety and security of the base." *Id*. at 792 (internal quotations omitted).  Notably, the guard in *Rutherford* deployed the barrier in response to *other unauthorized* vehicles attempting to enter a military base.

Here, the Air Forces' decisions about military base safety are susceptible to a policy analysis. *See Sigman*, 217 F.3d at 797 ("Decisions by base commanders regarding base security involve … the balancing of numerous policy considerations."); *Varig Airlines*, 467 U.S. at 820; *Gaubert*, 499 U.S. at 325-26. Plaintiff argues no new facts or authority but relies on conclusory allegations that the decision to adopt a safety policy is a discretionary function, while its implementation is not. (Dkt. No. 35 at 13.) Plaintiff wrongly argues that there is "no public policy consideration after the security personnel exercised their

discretion and decided that Plaintiff is allowed to come into the base and approved her pass." (*Id.*) The record demonstrates the IEC considers the safety of the base, as well as the surrounding community, when assessing the risk of a gate runner. (Dighton Decl. ¶¶ 2-4, 7; Paananen Decl. ¶¶ 2, 4, 6.) Indeed, the crux of this case is whether the injuries to Plaintiff outweighed the potential risks of the gate runner entering the base. The cases Plaintiff cites are inapposite as they include examples where the government had knowledge of specific safety hazards and failed to provide "any warnings" or did not monitor its safety compliance protocols. *See e.g., Faber v United States*, 56 F.3d 1122 (9th Cir. 1995); *Maryls Bear Medicine v. United States*, 241 F.3d 1208, 1215 (9th Cir. 2000); *compare to* Freeman Decl. ¶7, Fuji Decl. ¶ 4, Ex. B (regarding AVB safety features). Accordingly, Plaintiff has not created a material dispute the element that the decision to deploy the AVB is not grounded in public policy considerations.

On the pleadings, undisputed facts, applicable law, and the arguments of the parties, the discretionary function exception applies to Plaintiff's claims against the Government for negligence under the FTCA.

## IV.  CONCLUSION

Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment.

**IT IS SO ORDERED.**

DATED: October 10, 2025.

CONSUELO B. MARSHALL
UNITED STATES DISTRICT JUDGE